UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-21141-Civ-Huck
        (07-20065-Cr-Huck)
MAGISTRATE JUDGE P. A. WHITE

PHILLIP TAYLOR,                    :

          Movant,                  :

v.                                 :          REPORT OF
                                              MAGISTRATE JUDGE
UNITED STATES OF AMERICA           :

          Respondent.              :
_____

    This matter is before the Court on the movant's timely filed
motion to vacate pursuant to 28 U.S.C. §2255, attacking his
conviction and sentence for conspiracy and importation of 100
kilograms of marijuana and conspiracy to possess and possession
with intent to distribute 100 kilograms of marijuana, entered
following a jury verdict in case no. 07-Cr-20065-Huck.

    The Court has reviewed the motion with attached memorandum of
law (Cv-DE#1), the amendment thereto (Cv-DE#3), notice of filing
evidence (Cv-DE#4), the government's answer (Cv-DE#10), the Pre-
sentence Investigation Report (PSI), and all pertinent portions of
the underlying criminal file.

Claims Raised

    Construing the movant's arguments liberally as afforded pro se
litigants pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the

1

movant appears to raise the following claims in his §2255 motion:[1]

    1.    The movant was denied effective assistance of trial counsel due to various reasons. (Cv-DE#1:attached memo:8).

    2.    The movant is actually innocent. (Cv-DE#1:attached memo:17).

    3.    The movant was denied effective assistance of appellate counsel due to various reasons. (Cv-DE#1:attached memo:21).

    4.    The movant's sentence was unreasonable, unconstitutional and/or otherwise subject to collateral attack. (Cv-DE#1:attached memo:30).

On April 29, 2009, the movant filed a Notice of Filing Evidence, wherein he essentially raised a new claim. (Cv-DE#4).

    5.   The introduction of the cell phone evidence was improper as the Court had yet to rule on the government's motion to bring electronic equipment into the courthouse. (Cv-DE#4).

<u>Factual History</u>[2]

---

[1] The movant's numbered Ground One is not a claim, but rather a statement that relief in his motion to vacate is appropriate pursuant to 28 U.S.C. §2255. (Cv-DE#1:24).

[2] The factual history of the underlying criminal case was taken from the PSI.

In October 2006, the Drug Enforcement Administration Miami Division (DEA), in cooperation with the DEA, Freeport, Bahamas, initiated an investigation after a source provided information that certain targets, including Eugene Russell, were arranging to smuggle controlled substances from Bimini to South Florida.

Based on information received, the agents believed that the South Florida recipients of the drugs intended to use a Chevrolet Avalanche equipped with a boat hitch to facilitate the smuggling operation.

Thereafter, on November 1, 2006, agents observed the Avalanche towing a 24-foot boat to the Miami Outboard Club where it was dropped into the water. The boat, with registration number FL0235MM was registered to the movant, Russell's associate. Later that day, DEA Miami received information from DEA Freeport that members of the organization intended to smuggle controlled substances from Bimini to South Florida that evening. However, DEA Freeport subsequently reported that the scheme was postponed due to mechanical problems associated with the movant's boat and returned to Miami.

The source also informed that Russell planned to travel from Miami to Bimini during the week of January 15, 2007 by way of a pleasure craft vessel to acquire marijuana and smuggle it into the United States.

On January 23, 2007, DEA agents, along with detectives of the Miami Police Department (MPD) learned that Russell and Rocky Roberto Saunders departed Bimini en route to Miami on the pleasure craft vessel. As a result of that information, agents established surveillance in the vicinity of the offload site as well as the

3

Dinner Key Marina and on the Chevrolet Avalanche. Agents of the Immigration and Customs Enforcement (ICE) Aerial Unit also participated in the surveillance.

At about 9:20 p.m., that same evening, ICE aerial units on surveillance observed the movant's vessel leave North Bimini and proceed westerly towards the United States. The vessel's navigational lights were not activated. ICE maintained surveillance of the vessel and notified law enforcement conducting surveillance on land in the United States.

Later that evening, at about 9:45 p.m., the law enforcement surveying the Avalanche at a residence in Miami observed several vehicles arrive at the home; to wit: a Toyota Camry, Jeep Cherokee and the Chevrolet Avalanche. Soon after, a Chevrolet pickup truck arrived. The occupants entered the residence. Subsequently, two individuals left the residence, entered the pickup truck and left the area. The movant was the driver of the pickup truck. Soon after the pickup truck departed, the Toyota and Jeep left the residence.

At about 10:30 p.m., the ICE aerial unit, while on surveillance of the movant's vessel, lost view of it due to weather conditions when it was about five miles off the Miami shore near Coconut Grove.

At around the same time, agents on surveillance in the Royal Street area in Coconut Grove observed a red utility van parked at the end of the street. Simultaneously, law enforcement officers observed three males, two of whom were identified as Delton Cash and Lamardo King, standing near the utility van. King was observed waving his had as if signaling the vessel which was arriving at the seawall. Agents also heard the motors of an incoming vessel, which

displayed no navigational lights and was substantially similar in description to the vessel observed by the ICE aerial unit that left the Bahamas. The vessel approached the off load site at the dead end of Royal Street and shut off the boat engine.

Thereafter, at about 11:00 p.m., agents observed three individuals on the vessel, later identified as Russell, Rodney Robins and Saunders. The occupants of the vessel were observed offloading several large parcels, passing the parcels to Cash, King and an unidentified male, who then loaded the parcels into the van. After all of the packages were loaded into the van, Saunders and Robins transferred from the vessel to land. Then, Saunders, Robins, King, Cash and the unidentified male entered the van and began traveling westbound on Royal Street. At the same time, Russell started the vessel's engine and guided the vessel toward Dinner Key Marina.

Law enforcement agents approached the van. However, the van, in an attempt to evade the police, struck the passenger front bumper area of the police vehicle. Saunders, King, Cash and the unidentified male jumped out of the van and fled on foot. Upon the agents arrival at the van, the rear doors and passenger doors were opened. In plain sight, several suitcases, plastic bags and boxes were observed. There were 63 individual plastic bags or packages of suspected marijuana. A strong odor of marijuana was detected. Robins was arrested at the van. The substance was seized and weighted about 660 pounds or approximately 300 kilograms. Cash and Saunders ran back to the sea wall and jumped into Biscayne Bay where they were apprehended in the water on the south side of Royal Street. King was apprehended after canine units located him hiding in the underbrush.

A subsequent search of Cash resulted in a small amount of marijuana found on his person. Additionally, $1,420 was found in his sock. Cash spontaneously stated to agents that he originally had $2,500 on his person, but when he jumped in the bay, some of his money floated to the surface. A laboratory analysis of the marijuana seized from cash revealed a net weight of 10.6 grams.

At about the same time, agents on surveillance at the Dinner Key Marina observed the silver pickup truck parked at the marina with its lights off. During the enforcement activity involving the van, the silver pickup truck began to leave the Dinner Key Marina with a trailer in tow. The vehicle, driven by Taylor, was detained and Taylor was arrested. Taylor advised agents he was waiting to pick up his friend "Frank" and his friend's boat. A consent search of the truck revealed a small amount of marijuana hidden beneath the ash stray in the vehicle's center console. A laboratory analysis of the marijuana seized from Taylor's truck revealed a net weight of 3.1 grams.

On January 25, 2007, the vessel was located at the Legion Memorial Marina in Miami. A search of the vessel revealed a prescription pill bottle on the floor for Metformin which was prescribed to Eugene Russell.

## Procedural History

The procedural history of the underlying criminal case reveals that the movant was charged by way of indictment with conspiracy to import 100 kilograms or more of marijuana, in violation of 21 U.S.C. §954(a), all in violation of 21 U.S.C. §963 (Count One); importation of 100 kilograms or more of marijuana, in violation of 21 U.S.C. §952(a) and 18 U.S.C. §2 (Count Two); conspiracy to

6

possess with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §841(a)(1), all in violation of 21 U.S.C. §846 (Count Three); and possession with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §841(a)(1) and 18 U.S.C. §2 (Count Four). (Cr-DE#21).

On April 3, 2007, jury trial commenced. (Cr-DE#79). Prior to trial, co-defendants Cash, King, Robins and Saunders pleaded guilty to Count One of the Indictment. (Cr-DEs#51, 57, 58, 77). After two days of trial, the movant was found guilty as charged. (Cr-DE#85;Cr-DE#140:139-141). Moreover, the jury returned a special verdict finding the movant's offenses had involved three hundred kilograms of marijuana. (Id.). Likewise, during trial, co-defendants Cash and Robins testified against the movant. (Cr-DE#137:190,240).

A PSI was prepared in anticipation of sentencing wherein the probation officer determined that all of the counts were grouped together because the offense level was determined largely on the basis of the quantity of the substance involved. (PSI¶33). Thus, because the offense involved at least 100 kilograms but less than 400 kilograms of marijuana, the movant's base offense level was 26. (PSI¶34). Moreover, because the movant was a manager or supervisor, but not an organizer and the criminal activity involved five or more participants or was otherwise extensive, his base offense level was increased by three levels. (PSI¶37). Thus, his total offense level was set at 29. (PSI¶42).

The probation officer further determined the movant had a subtotal of six criminal history points. (PSI¶60). However, because the offense was committed less than two years from release from custody, two points were added. (PSI¶61). Accordingly, the movant

had a total of eight criminal history points and a criminal history category of IV. (PSI¶62). Based on a total offense level of 29 and a criminal history category of IV, his guideline imprisonment range was set between 121 and 151 months. (PSI¶117).

On June 12, 2007, defense counsel filed objections to the PSI, objecting, in pertinent part, to paragraph #27, which assessed the movant a three level increase for being a leader, organizer or manager. (Cr-DE#104).

On June 19, 2007, the movant appeared for sentencing, wherein he was sentenced to concurrent terms of 96 months imprisonment as to Counts One through Four of the Indictment, to be followed by four years of supervised release and a special assessment of $400. (Cr-DEs#120,123,142:15-16). The Clerk entered judgment on June 21, 2007. (Cr-DE#123). The movant filed a timely notice of appeal. (Cr-DE#124). On May 21, 2008, the Eleventh Circuit, <u>per curiam</u>, issued a mandate affirming the movant's convictions and sentences. (Cr-DE#151). It appears from the record, the movant did not file for writ of certiorari. For purposes of the federal one-year limitations period, the judgment of conviction in the underlying criminal case became final at the latest on August 21, 2008, when time expired for filing a petition for writ of certiorari, ninety days following affirmance of the movant's conviction on direct appeal.[3] At the latest, the movant was required to file this motion

---

[3]The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321, n.6 (1986); <u>accord</u>, <u>United States v. Kaufman</u>, 282 F.3d 1336 (11th Cir. 2002). Once a judgment is entered by a United States court of appeals, a petition for writ of certiorari must be filed within 90 days of the date of entry. The 90 day time period runs from the date of entry of the judgment rather than the issuance of a mandate. <u>Sup.Ct.R</u>. 13; <u>see</u> <u>also</u>, <u>Close v. United States</u>, 336 F.3d 1283 (11th Cir. 2003).

to vacate within one year from the time the judgment became final, or no later than August 21, 2009. See Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986). The movant timely filed his motion to vacate. (Cv-DE#1).

## Discussion of Claims

First, it should be noted that the foregoing claims, could have been, but were not raised on direct appeal. Notwithstanding, construing the arguments made by the movant in support thereof, he appears to argue that counsel was ineffective for failing to pursue the claims. A claim of ineffective assistance of counsel may constitute cause for failure to previously raise the issue. United States v. Breckenridge, 93 F.3d 132 (4th Cir. 1996). Attorney error, however, does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test enunciated in Strickland v. Washington, 466 U.S. 668 (1984); Murray v. Carrier, 477 U.S. 478, 488 (1986). Thus, each claim will be identified and treated in turn in this Report, infra.

In order for the movant to prevail on a claim of ineffective assistance of counsel, he must establish that 1) his counsel's representation fell below an objective standard of reasonableness; and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11th Cir. 1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. Glover v. United States, 531 U.S. 198, 203-04 (2001).

Moreover, review of counsel's conduct is to be highly deferential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11th Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11th Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>Rogers v. Zant</u>, 13 F.2d 384, 386 (11th Cir. 1994).

In **claim one**, the movant asserts he was denied effective assistance of trial counsel due to various reasons. (Cv-DE#1:attached memo:8).

In this claim, the movant raises a plethora of issues pertaining to ineffective assistance of counsel during the trial stage of the underlying criminal case. Specifically, it appears he argues that trial counsel was ineffective for: (a) objecting to co-defendants testifying; (b) failing to adequately investigate the case; (c) objecting to admission of phone records but failing to research or investigate who the phones belonged to or who used them; (d) failing to permit the movant to testify on his own behalf; (e) failing to raise a <u>Crawford</u> argument; (f) failing to object to prosecutorial misconduct; (g) failing to properly communicate with the movant; (h) failing to subject the government's case to any meaningful adversarial testing and (i) failing to discover errors contained within the PSI. (Cv-DE#1:attached memo:11-12,18).

10

First, with respect to the movant's arguments that counsel was ineffective for (a) objecting to co-defendants testifying; (b) failing to adequately investigate the case; (c) objecting to admission of phone records but failing to research or investigate who the phones belonged to or who used them; (f) failing to object to prosecutorial misconduct; (g) failing to properly communicate with the movant and (h) failing to subject the government's case to any meaningful adversarial testing, these claims are without merit.

Aside from the movant's self-serving allegations, he fails to provide any facts or law in support thereof. As such, bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. See United States v. Robinson, 64 F.3d 403, 405 (8th Cir. 1995), Ferguson v. United States, 699 F.2d 1071 (11th Cir. 1983), United States v. Ammirato, 670 F.2d 552 (5th Cir. 1982); United States v. Sanderson, 595 F.2d 1021 (5th Cir. 1979). There is nothing of record in this proceeding or the underlying criminal case to support the movant's vague assertions.

Moreover, even if it can be determined that counsel was deficient for failing to object, the movant fails to demonstrate prejudice as a result therefrom. Likewise, the movant fails, in light of the strong case the government had against him, to show that had counsel objected to any of the foregoing arguments, the court would have sustained said objection. Under these circumstances, no deficient performance or prejudice has been established pursuant to Strickland, supra, and the movant is therefore entitled to no relief on the claims.

Moreover, to the extent the movant argues that counsel failed

to permit the movant to testify on his own behalf at trial, this claim is also without merit.

Even if the movant testified and made a blanket assertion of innocence, or attempted to negate his involvement in the offenses, there is no reasonable probability that his testimony would have resulted in an acquittal. It is true that a criminal defendant has a fundamental constitutional right to testify in his or her own behalf at trial. Rock v. Arkansas, 483 U.S. 44, 49-52 (1987); United States v. Teague, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc). This right is personal to the defendant, and cannot be waived by the trial court or defense counsel. Teague, supra; Brown v. Artuz, 124 F.3d 73, 77-78 (2d Cir. 1997). The proper vehicle for an argument that a defendant's right to testify was violated by his trial counsel is a claim of ineffective assistance of counsel, which requires analysis under Strickland v. Washington, 466 U.S. 668 (1984). Gallego v. United States,174 F.3d 1196 (11th Cir. 1999)(citing Teague, 953 F.2d at 1534); Brown, 124 F.3d at 79-80; Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). United States v. Tavares, 100 F.3d 995, 998 (D.C. Cir.1996).

However, not all assertions of ineffective assistance of counsel with regard to the right to testify or not testify warrant evidentiary hearing. Underwood v. Clark, 939 F.2d 473 at 476 (7th Cir. 1991)(barebones assertion by a defendant is insufficient to require a hearing on a claim that the right to testify was denied, greater particularity and some substantiation such as an affidavit from the lawyer who allegedly forbade his client to testify are necessary to give the claim sufficient credibility to warrant a further investment of judicial resources); Siciliano v. Vose, 834 F.2d 29 (1st Cir. 1987)(defendant's conclusory allegation that his attorney refused to allow him to testify in his own behalf was

insufficient to entitle him to hearing on issue of whether his right to testify was violated); <u>Passos-Paternina v. United States</u>, 12 F. Supp. 231, 239-40 (D. Puerto Rico 1998).

The Fourth Circuit has held that a hearing was not necessary where the defendant suffered no prejudice under <u>Strickland</u>, <u>supra</u>, because "his testimony at trial only helped his case..." <u>Sexton v. French</u>, 163 F.3d 874, 883 (4th Cir. 1998), <u>cert. denied</u>, 120 S.Ct. 139 (1999). As stated, the Eleventh Circuit has not determined whether a conclusory allegation is sufficient to warrant further inquiry, such as the grant of a hearing.[4] <u>See</u>, <u>e.g.</u> <u>Brown</u>, 124 F.3d at 80. However, it is clear that a defendant must prove prejudice in order to be entitled to relief on such a claim. <u>See Teague</u>, <u>supra</u>.

Given the sufficiency of the evidence adduced at trial implicating the movant in the offenses, even if the movant had testified, no showing has been made in this collateral proceeding that his testimony would have resulted in an acquittal. Moreover, the movant has failed to establish prejudice stemming from counsel's alleged deficient performance and is entitled to no relief on this claim. <u>Strickland v. Washington</u>, <u>supra</u>. Likewise, the movant's claim that counsel failed and/or refused to allow him to testify on his own behalf is self-serving and not supported by any affidavit from counsel.[5] Counsel could have well believed that

_____

[4]In <u>Gallego v. United States</u>, 174 F.3d (11th Cir. 1999) the Court rejects a "per se credit counsel in case of counsel rule," with regard to credibility findings in evidentiary hearings, but does not address the issue of when a hearing is actually required.

[5]<u>See</u>, <u>e.g.</u>, <u>White v. United States</u>, 99 Ci. 11809, 2000 WL 546426 at *5 (S.D.N.Y. 2000)(Where petitioner asserted that he wanted to testify, but counsel rested the defenses case without calling petitioner, court found that petitioner's affidavit "fail[ed] to substantiate his allegation that trial counsel's performance was deficient." "'[T]he defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too

13

the movant's version of the events was not credible or too suspect
to put the movant on the stand, and would subject the movant to
detrimental cross-examination regarding his prior convictions and
his post-arrest statements. Such a strategic decision should not be
second-guessed here. See McNeal v. Wainwright, 722 F.2d 674 (11th
Cir., 1984); United States v. Costa, 691 F.2d 1358 (11th Cir.
1982). Under these circumstances, no deficient performance or
prejudice has been established arising from counsel's misadvise or
refusal to allow the movant to testify on his own behalf.

To the extent the movant argues that counsel failed to raise
a Crawford argument, this claim is also without merit. It appears
the movant misinterprets the Court's holding in Crawford v.
Washington, 541 U.S. 36 (2004). According to the movant, during
trial, one of the witnesses testified that he heard someone talk on
the phone with another person by the name of "bugs." (Cv-
DE#1:attached memo:13). The movant argues that such a statement is
testimonial by nature and thus could not be substantiated. (Id.).
Moreover, he further argues, that the person speaking on the phone
was never called to testify. (Id.). Consequently, a Crawford
violation occurred. (Id.).

Hearsay "is a statement, other than one made by the declarant
while testifying at the trial or hearing, offered in evidence to
prove the truth of the matter asserted." Fed.R.Evid. 801(c).
Hearsay is inadmissible unless the statement is not hearsay as

---

plausible statement that his lawyer (in violation of professional standards)
forbade him to take the stand.'", quoting, United States v. Castillo, 14 F.3d
802, 805 (2d Cir.), cert. den'd, 513 U.S. 829 (1994); see also, e.g., Jeffries
v. United States, 234 F.3d 1268 (6th Cir. 2000)(table)(Petitioner "has not
shown that counsel's performance was deficient as he merely made conclusory,
self-serving allegations that his attorney refused to let him take the
stand."); Torres v. Stinson, 2000 WL 1919916 at *5 (E.D. N.Y. 2000)("A
barebones assertion by a defendant that his counsel failed to inform him of
his rights is insufficient to establish an ineffective assistance of counsel
claim under Strickland.").

provided by <u>Fed.R.Evid.</u> 801(d), or falls into one of the hearsay exceptions enumerated in Rules 803, 804, and 807 of the Federal Rules of Evidence. Moreover, if hearsay is "testimonial," that is, for example, "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." <u>Crawford v. Washington</u>, 541 U.S. 36, 52 (2004). The Confrontation Clause[6] prohibits its admission at trial unless (1) the declarant is unavailable, and (2) the defendant has had a prior opportunity to cross-examine the declarant. <u>See</u> <u>Crawford</u>, <u>supra</u> at 59, 68.

While the Supreme Court has not clarified which statements are in fact "testimonial," it has provided some guidance on the term's meaning. It defined "testimony" as "typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" <u>Id.</u> at 51 (<u>quoting</u> 1 N. Webster, An American Dictionary of the English Language (1828)). Thus, "formal statement[s] to government officers" are generally testimonial. <u>Crawford</u>, 541 U.S. at 51. So is "ex parte in-court testimony or its functional equivalent--that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." <u>Id.</u> Similarly, "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," fall within the "core class" of testimony. <u>Id.</u>

---

[6]The Confrontation Clause provides that "[I]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.

Admission of non-testimonial hearsay against criminal defendants is not governed by Crawford, but still violates the Confrontation Clause unless the statement falls within a firmly rooted hearsay exception, or otherwise carries a particularized guarantee of trustworthiness. Ohio v. Roberts, 448 U.S. 56, 66 (1980).[7] A hearsay exception is firmly rooted if, "in light of longstanding judicial and legislative experience [the exception] rests on such a solid foundation that admission of virtually any evidence within it comports with the substance of the constitutional protection." Lilly v. Virginia, 527 U.S. 116, 126 (1999).

Although the movant fails to specify which witness or which portion of the transcript violated his Confrontation Clause rights, it appears the movant refers to when co-defendant Robins testified that when they were on the boat about five miles off the coast of Florida, co-conspirator Russell took out his cell phone and dialed a number and told Saunders to ask Bugsy where he was. (See Cr-DE#137:248). However, the statement made by Robins is neither testimonial hearsay nor a statement protected under the Court's holdings in Crawford, supra.

Even if this Court were to assume, without deciding, that a violation of the movant's confrontation rights did occur, the movant is still entitled to no relief on the claim because he

---

[7]Crawford supercedes Roberts insofar as testimonial hearsay is concerned as the Roberts formulation remains applicable to non-testimonial statements. See United States v. Franklin, 415 F.3d 537, 546 (6th Cir. 2005)(explaining that with respect to non-testimonial statements, the Roberts formulation remains the controlling precedent, under which non-testimonial statements are constitutionally admissible if they "bear independent guarantees of trustworthiness"); United States v. Saget, 377 F.3d 223, 227 (2d Cir. 2004)(stating that "Crawford leaves the Roberts approach untouched with respect to non-testimonial statements").

cannot demonstrate that the admission of this testimony or the videotape had a substantial influence on the jury's decision to convict. Under these circumstances, the movant has failed to establish prejudice pursuant to <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) arising from counsel's failure to pursue this claim.

To the extent the movant argues that his due process rights were violated when his probation was revoked after the expiration of the original term of probation and therefore, two criminal history points should not have been assessed, this claim is without merit. (Cv-DE#1: attached memo:18-20). The movant fails to provide any support for the arguments presented herein.

However, even if the movant is given the benefit of the doubt, his claim is still without merit. The Second Addendum to the PSI explains why there was a delay in imposing the movant's sentence, thereby also explaining that his term of probation was in effect at the time of revocation. The Second Addendum, in pertinent part, reads:

> The defendant has a history of driving with a suspended license since at least October 1995, as reflected in his 'Historical Driver License Activity' on file with the Florida Department of Highway Safety and Motor Vehicles (DHSMV). Beginning in 2001, the defendant's license was revoked for five years and suspended indefinitely 14 times. These same records reflect notice required by §322.251, Florida Statutes, was given.

> Phillip Taylor was arrested for felony driving with a suspended license on September 7, 2001 (see paragraph 57). He pled no contest on March 8, 2002, and was placed on probation for one year. While on probation, Taylor was arrested again May 21, 2002, for driving with a suspended license. (<u>See</u> paragraph 58). Eight days later, he was arrested in Tampa, Florida (see paragraph 59), before the disposition in the second case. According to the Inmate Records Department, Taylor was incarcerated in Tampa from

17

> May 29, 2002, until June 10, 2004. On September 13, 2002,
> a detainer was lodged by the Broward County Sheriff's
> Office for driving with a revoked license and a violation
> of probation. That detainer was released June 10, 2004,
> when the defendant was released from custody in Tampa. It
> is unclear what happened between June 27, 2005, when the
> defendant returned to court in Broward County. However,
> it is clear that the guidelines do not make exceptions to
> this two-year recency rule for delays caused by
> extenuating circumstances within or outside of the
> defendant's control.

(PSI: Second Addendum). Accordingly, this claim is without merit since the movant committed the violation of probation within the one year period of probation imposed for the offense set forth in paragraph 57 and therefore, he was properly assessed the two criminal history points for that sentence.

Moreover, to the extent the movant argues that Amendment 709 of the sentencing guidelines prohibits the two point assessment to his criminal history points, this claim is without merit.

The Sentencing Commission adopted Amendment 709, effective November 1, 2007, which addressed the computation of criminal history scores in two areas: (1) the counting of multiple prior sentences as "single" or "separate" sentences (previously called "related sentences") and (2) the counting of certain misdemeanor or petty offenses subject to a probationary term. See U.S.S.G., App. C, Amend. 709. Pursuant to this amendment, a court must count prior sentences as "separate" sentences when there is an intervening arrest, i.e., the defendant is arrested for the first offense prior to committing the second offense. If there was not an intervening arrest, the prior sentences are still counted as "separate" sentences unless the sentences were for offenses that were named in the same charging document or the sentences were imposed on the same day. Second, pursuant to the recent amendment, misdemeanor or

petty offenses listed in §4A1.2(c)(1) are counted in the criminal
history score only if the sentencing court imposed at least thirty
days imprisonment or "more than" one year of probation. Previously,
these types of misdemeanor offenses were counted if the sentencing
court imposed at least thirty days imprisonment or "at least" one
year of probation.

The movant, however, is entitled to no relief on this claim,
as Amendment 709, effective November 1, 2007, after the movant's
sentence was imposed in this case, is not retroactively applicable
to cases on collateral review. See Supp. to 2007 Supp. to App. C,
Amend. 712, Revised Section 1B1.10(a) and (c). In other words, even
if the criminal history computation changes made as a result of
Amendment 709 affected the movant's guideline computation, the
relief being requested could not be granted because the amendment
does not have retroactive application. See generally UnitedStates
v. Armstrong, 347 F.3d 905, 909 (11th Cir. 2003). Because the
movant was sentenced before Amendment 709 became effective, he
cannot obtain the benefit of Amendment 709. See, e.g., United
States v. Peters, 524 F.3d 905, 906 (8th Cir. 2008); United States
v. Cofield, 2007 WL 4532938, *1 (4th Cir. 2007)

Moreover, counsel did in fact object to the assessment of the
two criminal history points for committing the offense within two
years of being released from prison for his prior offenses. (Cr-
DE#104). As such, the movant fails to demonstrate that counsel was
deficient for failing to file objections thereto.

To the extent the movant argues that paragraph 58 of the PSI
is in error where it states that he was arrested on May 21, 2002,
but released more than three years later on June 28, 2005, while
the PSI states that he was sentenced to 254 days, this claim is

without merit. As discussed _supra_, the three year delay was a result of the movant's arrest and detainment in Tampa, Florida on other charges which occurred prior to his prosecutions for the offenses set forth in paragraphs 57 and 58 of the PSI. Accordingly, the PSI is not in error.

Finally, to the extent the movant argues that the PSI incorrectly reflects that he was released from custody on June 28, 2005 for the convictions in paragraphs 57 and 58 of the PSI when he alleges he was in fact released in 2004, this claim is without merit. Despite the movant's allegations, he provides no proof or any other indicia of reliability aside from his self-serving allegations that he was released in 2004 rather than in 2005. The PSI unequivocally reflects that he was released from custody on June 28, 2005. Thus, the movant was properly assessed two additional criminal history points for committing the offense in the underlying criminal proceeding within two years of release from custody on a sentence pursuant to paragraphs 57 and 58 of the PSI. (PSI¶61).

Therefore, because the movant's claim of errors in the PSI are meritless, counsel was not ineffective for failing to object thereto during sentencing. Under these circumstances, no deficient performance or prejudice has been established arising from counsel's failure to pursue this claim. Thus, he is entitled to no relief.

In **claim two**, the movant asserts he is actually innocent. (Cv-DE#1:attached memo:17).

The movant's protestations of innocence in this motion to vacate are without substantiation in the record. A habeas

petitioner attempting to establish "actual innocence" must meet a high standard. Bousley v. United States, 523 U.S. 614 (1998). The movant must demonstrate that "in light of all the evidence, 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley, supra at 623, quoting, Schlup v. Delo, 513 U.S. 298, 327-328 (1995). The Court emphasized that actual innocence means factual innocence, not mere legal insufficiency. Id. See also High v. Head, 209 F.3d 1257 (11th Cir. 2000); Lee v. Kemna, 213 F.3d 1037, 1039(8th Cir.2000); Lucidore v. New York State Div. of Parole, 209 F.3d 107 (2nd Cir. 2000);citing Schlup v. Delo, 513 U.S. 298, 299, (1995); Jones v. United States,153 F.3d 1305 (11th Cir. 1998)(holding that appellant must establish that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him). To be credible, a claim of actual innocence requires the petitioner to "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Schlup v. Delo, 513 U.S. at 324. All things considered, the evidence must undermine the Court's confidence in the outcome of the trial. Id. at 316. No such showing has been made here; thus, the movant's claim is without merit.

In **claim three**, the movant asserts he was denied effective assistance of appellate counsel due to various reasons. (Cv-DE#1:attached memo:21).

In this claim, the movant again raises several sub-issues. However, he now specifically argues that he was denied effective assistance of appellate counsel when counsel (a) argued that the introduction of summaries of cell phone records was testimonial evidence, which violated the Confrontation Clause; (b) argued that

the denial of a downward departure was erroneous because downward departures by their nature are discretionary; (c) argued that the admission of particular portions of his co-defendants' testimony was improper; and (d) made statements referring to the fact that the phone was in the movant's possession. (Cv-DE#1:attached memo: 21-22).

The movant's argument that counsel was ineffective for arguing that the introduction of summaries of cell phone records was testimonial evidence, which violated the Confrontation Clause, and instead, counsel should have challenged the introduction as the records was improper since they did not relate to the movant and should have further argued that the cell phone which had been found in the truck at the time of his arrest was not his phone and was not used by him is meritless. (Cv-DE#1:attached memo:21).

Despite the movant's allegations, given the overwhelming evidence adduced at trial implicating him, no showing has been made that had counsel challenged the introduction of the records, the result thereof would have resulted in a not guilty verdict. Consequently, the movant cannot establish prejudice arising from counsel's failure to pursue this claim.

To the extent the movant argues that appellate counsel should not have (a) argued that the denial of a downward departure was erroneous because downward departures by their nature are discretionary; (b) argued that the admission of certain portions of his co-defendants' testimonies was improper; or (c) made statements referring to the fact that the phone was in the movant's possession, these claims are without merit. (Cv-DE#1:attached memo:21).

22

Once again, aside from his self-serving allegations, the movant fails to provide any facts or law in support thereof. As such, bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. There is nothing of record in this proceeding or the underlying criminal case to support the movant's vague assertions.

Moreover, even if it can be determined that counsel was deficient for failing to object, the movant fails to demonstrate prejudice as a result therefrom. Likewise, the movant fails, in light of the strong case the government had against him, to show that had counsel refrained from making the aforementioned arguments, the outcome of the trial would have resulted in a not guilty verdict. Under these circumstances, no deficient performance or prejudice has been established pursuant to <u>Strickland</u>, <u>supra</u>, and the movant is therefore entitled to no relief on the claims.

Moreover, the movant also faults appellate counsel for failing to raise other issues instead, such as (a) sufficiency of the evidence; (b) whether the District Court erred by denying his motion for acquittal; (c) whether there was any evidence of possession with intent to distribute as the police only found 3.1 grams of marijuana; (d) whether there was any evidence that the movant was actually in the boat with the co-defendants. (Cv-DE#1:attached memo:23).

Notwithstanding the movant's contentions, he fails to provide any facts or law in support of the aforementioned issues counsel should have raised on appeal, except for the argument that there was no evidence of possession with intent to distribute where the

police found only 3.1 grams of marijuana. (Cv-DE#1:attached memo:23). According to him, the amount of marijuana would only have supported a mere possession charge and therefore could not be the basis for a distribution charge. (Id.). Moreover, he states that evidence as to any other amount does not exist. (Id.). Despite the movant's contentions thereto, the trial record reflects evidence which established his involvement in the conspiracy to import and possess with intent to distribute 660 pounds of marijuana. Likewise, the movant was not charged with the 3.1 grams of marijuana which was found in the truck he drove when arrested. Accordingly, any argument by appellate counsel thereto would have been meritless.

In regards to the other claims the movant argues appellate counsel should have raised, he fails to provide any facts or law in support thereof. As such, bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration.

It appears the movant further argues that appellate counsel should have challenged his conviction on the basis that there was no evidence that he was involved in the importation or conspiracy to import marijuana. (Cv-DE#1:attached memo:24). In support thereof, he argues that his only connection to his co-defendants are the phone records and the phones seized, none of which have ever been shown were used or owned by him. (Id.). Despite the movant's allegations, given the overwhelming evidence adduced at trial, no showing has been made that had counsel challenged his conviction, the result thereof would have resulted in a not guilty verdict. Consequently, the movant cannot establish prejudice

arising from counsel's failure to pursue these claims.

To the extent the movant argues that counsel was ineffective for failing to object to the criminal history calculations set forth in the PSI, this claim is without merit. (Cv-DE#1:attached memo:27). This claim is a mere reiteration of the arguments set forth in **claim one** and should be denied for the reasons stated therein.

To the extent the movant argues that counsel was ineffective for failing to argue that Amendment 709 of the sentencing guidelines was applicable this claim is a mere reiteration of the arguments set forth in **claim one**, and for the reasons stated therein, it should be denied.

Moreover, to the extent the movant argues that counsel was ineffective when he failed to file a supplemental appellate brief as a result of the newly enacted sentencing guideline amendment, this claim is also without merit.

The Eleventh Circuit clearly prohibits attorneys from raising a new issue for the first time in a supplemental appellate brief. United States v. Smith, 416 F.3d 1350, 1352-55 & n.1 (11th Cir. 2005); United States v. Levy, 416 F.3d 1273, 1275-76 (11th Cir. 2005). Accordingly, appellate counsel was not ineffective for failing to file a supplemental brief raising a new claim, which would have been summarily stricken by the Court of Appeals. Moreover, no showing has been made that even had counsel filed a supplemental brief raising the Amendment 709 claim, that the Eleventh Circuit would have permitted said filing.

To the extent the movant argues that the two points assessed

to him as a result of the offenses set forth in Paragraph 61 of the PSI should be removed because he was actually released in 2004 and not in 2005, this claim is also a mere reiteration of one of the sub-issues raised with respect to **claim one** and should be denied for the reasons stated therein.

To show that his appellate counsel was ineffective, the movant must establish that his appellate counsel performed deficiently and that the deficient performance resulted in prejudice. <u>Joiner v. United States</u>, 103 F.3d 961 (11th Cir. 1997). To determine prejudice, we must review the merits of an omitted claim. If we find that the omitted claim would have had a reasonable probability of success on appeal, then counsel's performance necessarily resulted in prejudice. <u>Id.</u>; citing <u>Heath v. Jones</u>, 941 F.2d 1126, 1136 (11th Cir. 1991).

As discussed above, the movant would not have had a reasonable probability of success on the claims and thus, he has failed to establish prejudice and is entitled to no relief on these claims.

Moreover, counsel's strategic decision to not raise additional claims on direct appeal, does not rise to the level of ineffective assistance. Generally, tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance of counsel. <u>United States v. Costa</u>, 691 F.2d 1358 (11th Cir. 1982); <u>Coco v. United States</u>, 569 F.2d 367 (5th Cir. 1978). Even if a strategic decision appears incorrect in retrospect, it can constitute ineffective assistance only "if it was so patently unreasonable that no attorney would have chosen it," <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983), <u>cert. denied</u>, 464 U.S. 1663 (1984), or if the petitioner can demonstrate a "reasonable probability that the verdict [otherwise] would have

been different." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375 (1986); <u>see also</u>, <u>Nero v. Blackburn</u>, 597 F.2d 991 (5th Cir. 1979)(A defendant may prevail on an ineffective assistance claim relating to trial strategy if he can show that counsel's conduct is so egregious as to raise an inference that it could not reasonably be part of any legitimate strategy.). No such showing had been made here.

In **claim four**, the movant asserts his sentence was unreasonable, unconstitutional and/or otherwise subject to collateral attack. (Cv-DE#1:attached memo:30).

This claim is a mere reiteration of the arguments presented pursuant to **claims one and three**, <u>supra</u>, and should be denied for the reasons stated therein.

In **claim five**, the movant asserts that the introduction of the cell phone evidence was improper as the Court had yet to rule on the government's motion to bring electronic equipment into the courthouse. (Cv-DE#4).

This claim, could have been, but was not raised on direct appeal. Because the claim was not raised on direct appeal, it is procedurally barred from review in this collateral proceeding unless the movant can show cause for the default and actual prejudice, <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977), or a fundamental miscarriage of justice, <u>Engle v. Isaac</u>, 456 U.S. 107 (1982). Constitutionally ineffective assistance of counsel can constitute cause. <u>See</u> <u>Holladay v. Haley</u>, 209 F.3d 1243, 1253 (11th Cir. 2000), <u>citing</u>, <u>Hollis v. Davis</u>, 941 F.2d 1471, 1476 (11th Cir.1991), <u>citing</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)); <u>see also</u>, <u>United States v. Breckenridge</u>, 93 F.3d 132 (4th Cir. 1996).

Attorney error, however, does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).

The movant, in this collateral proceeding, neither shows cause for failing to raise the issue on direct appeal nor does he show any actual prejudice as a result therefrom. Notwithstanding, the claim will be discussed.

As previously noted, subsequent to filing his motion to vacate, the movant filed an untitled hand written document purporting to supplement his motion to vacate with an additional claim that evidence had been improperly submitted without prior court authorization. (Cv-DE#4).

It appears the movant argues that the cell phone evidence should not have been admitted into evidence during trial because the District Court failed to rule on the government's motion to bring electronic equipment into the courthouse. (Cv-DE#4; <u>See</u> Cr-DE#67). It appears the movant misunderstands the essence of the government's motion. A review of the motion reveals that the government did not seek permission to introduce evidence at trial, but rather the means by which such evidence may be published or displayed to the jury via a computer, overhead projector or other necessary equipment. Accordingly, the movant's claim is without merit.

## Evidentiary Hearing

The movant's final request for an evidentiary hearing on his claim should be denied. A hearing is not required on patently

frivolous claims or those which are based upon unsupported, generalizations or affirmatively contradicted by the record. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this report, the claims raised are unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

<u>Conclusion</u>

It is therefore recommended that the motion to vacate be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 6th day of November, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Phillip Taylor, <u>Pro Se</u>
     Reg. No. 57120-004
     Federal Correctional Institution
     P.O. Box 4200
     Three Rivers, TX 78071

     Anne Ruth Schultz, AUSA
     United States Attorney's Office
     99 NE 4th Street
     Miami, FL 33132

     Robin Waugh-Farretta, AUSA
     United States Attorney's Office
     500 E Broward Boulevard
     7th Floor
     Ft. Lauderdale, FL 33301